IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| TROY T. CORNOCK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) C.A. No: 1:07-cv-391-JL |
| v. | ) |
| | ) |
| BANK OF AMERICA, *et al.*, | ) |
| Defendants. | ) |
| | ) |

**TRANS UNION LLC'S MEMORANDUM OF LAW IN
SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Trans Union LLC ("Trans Union") states as follows in support of its Motion for Summary Judgment

**I.      INTRODUCTION**

This case arises under the Fair Credit Reporting Act, 15 U.S.C. §1681, *et seq.* (the "FCRA").  Cornock alleges that Trans Union violated the FCRA by failing to meet the reinvestigation requirements set forth in FCRA §1681i in connection with his dispute of an MBNA credit card account  (Complaint, Dkt#1, ¶¶51, 56, 61, 66 and 71)  and by including the MBNA Account in later consumer reports about him in violation of §1681e(b).  Complaint, ¶46.

**II.     STATEMENT OF MATERIAL FACTS OF LEGAL SIGNIFICANCE
        WHICH ARE NOT IN DISPUTE (Local Rule 7.2(b)(1))**

1)      In 1995, Cornock's wife Lisa Cornock ("Lisa") opened an MBNA credit card account in Cornock's name, with Lisa listed as an authorized user. (Deposition of Troy Cornock, p. 16, "Dep. p. __" , Exhibit "1" hereto and ¶7 *infra*)

2)      The MBNA Account was opened while Cornock and Lisa were married and while she remained in the marital home with his young children. Dep. pp.7, 16, 18.

1

3)      The monthly statements associated with the MBNA Account were sent to the marital home; Lisa paid all bills received at the marital home. (Dep. p.21).

4)      The payments Lisa made on the MBNA Account were made from a joint account, in her name and Cornock's name.  (See ¶7 *infra.*)

5)      Cornock and Lisa were divorced in August 1998, three years after the MBNA Account was opened.  Dep. p. 21.

6)      Sometime in 1998 or 1999 MBNA first contacted Cornock to collect the unpaid balance owed in the MBNA Account.  Dep. p. 20.

7)      In March 2002, an arbitration award of $9,446.85 was entered in favor of MBNA and against Cornock.  (the "Arbitration Award").  On December 23, 2002, MBNA commenced an enforcement action against Cornock in the Superior Court for Hillsboro, New Hampshire. (the "Enforcement Action")  The Enforcement Action resulted in a final Order dated March 20, 2007, (the "March 2007 Order," Exhibit "2" hereto).[1]

8)      Sometime after 2004, Cornock discovered that the MBNA Account was reported on his Trans Union file.  Dep. p. 31.

9)      In December 2005 Cornock sent a purported dispute letter to Trans Union, which contained an erroneous account number, which was not in his Trans Union file. (the "December 2005 Letter")  Trans Union informed Cornock by letter that the disputed account information was not on his file.  Dep. p. 38  and See Declaration of Eileen Little, Trans Union's Consumer Relations Group Manager, ¶4 (Exhibit "3") and Cornock's Letter, Exhibit "B" thereto ("Little Decl. ¶__)

---

[1] Trans Union references the March 2007 Order, *passim*, to establish  certain facts pertinent to the MBNA Account,, the timing of the Enforcement Action including the March 2007 Order.

10) In January 2006, Cornock sent Trans Union a letter concerning the MBNA Account in which he asserted that he did not authorize the account to be opened; stated Lisa may have done so, did not sign for the account, did not make the charges, and had told MBNA he was not liable for the debt (the "Dispute").  Little Decl. ¶4.

11) The Dispute did not disclose the Arbitration Award or the pending Enforcement Action.

12) In response to the Dispute, Trans Union provided MBNA a notice of the dispute via an Automated Consumer Dispute Verification ("ACDV"), the industry wide standard dispute designed for FCRA compliance.  Little Decl. ¶5 and ACDV – Exhibit "B")  In August 2006, the FTC submitted a report to Congress, pursuant to §313(b) of the Fair and Accurate Credit Transactions Act ("FACTA")[2] on reinvestigations by CRAs http://www.ftc.gov/os/comments/fcradispute/P044808fcradisputeprocessreporttocongress.pdf.[3] (the "FACTA Report").  The FACTA Report contains a detailed description of the ACDV reinvestigation procedure used by Trans Union, including the systems and codes for consumer reporting agencies to communicate with furnishers of information.  (*See* FACTA Report, pp. 10-18).

13) The ACDV requested that MBNA verify Cornock's personal identifying information and provide MBNA with the following relevant information:

> Consumer not liable for acct (i.e., ex-spouse, business). If liable, provide complete ID and ECOA Code. Consumer claims true identity fraud; account fraudulently opened. Initiate investigation.

14) In response to the ACDV, MBNA verified Cornock's personal identifying information and verified that he was responsible for the account and Trans Union notified Cornock of the

---

[2]   FACTA, enacted in 2003, substantially amended the FCRA.

[3]   Congress empowered the FTC to enforce "the requirements imposed" under the FCRA (*See* FCRA §1681s(1), *Administrative Enforcement*.)

results of that reinvestigation on February 10, 2006. (The ACDV; Little Decl. at ¶¶6 and 8, and "C" thereto – the updated credit report)

15) Trans Union notified Cornock of his FCRA right to include a consumer statement with his side of the dispute with MBNA in future credit reports; Cornock did not exercise that right. Little Decl. ¶9 and Trans Union's Notice, Cornock's Bates #100172 (Exhibit "4").

16) Cornock sent one dispute (the Dispute) to Trans Union respecting the MBNA Account in January 2006; he sent no other disputes of the MBNA Account to Trans Union thereafter. Dep., p. 32-4 ,Little Decl. ¶¶2, 3, 5 and 9.

17) On December 1, 2006, Cornock filed a motion for summary judgment in the Enforcement Action and on March 20, 2007, the trial judge granted Cornock's motion and vacated the Arbitration Award. March 2007 Order at p.25.

18) In January 2008, at or about the time the instant lawsuit was filed, Trans Union permanently deleted the MBNA Account from Cornock's file. Little Decl. ¶7.

19) Cornock resides at 3 Moccasin Trail, Hillsboro, NH with his current wife, Lisa Lenhart Cornock ("Lenhart") who the sole "Owner of Record" of 3 Moccasin Trail. Dep., p. 6-8. and Exhibit "5" Town of Hillsborough Tax Bill produced by Cornock in this litigation.

20) Cornock claims the interest rate he was charged in April 2007 by Eaglemark Bank to finance the purchase of his Harley Davidson was "higher" than it should have been, but has introduced no documents to establish the rate he paid was higher because of Trans Union's reporting of the MBNA Account. Dep., pp. 66-68. (See also, Cornock's Answers to Trans Union's Interrogatories 4 and 11)(Exhibit "6")(herein "Interrogatory Answers No.__")

21) Cornock also claims he was denied a mortgage loan in May 2007 by Chase Home Mortgage to be secured by 3 Moccasin Trail, but he never actually applied for the mortgage and

has no proof that the alleged denial was caused by Trans Union's reporting of the MBNA Account.  In fact, the totality of the testimony is an alleged conversation with a bank employee. Dep. p. 84) (Interrogatory Answers Nos. 4 and 11)

22)     Cornock sought no medical treatment and suffered no emotional distress or physical symptoms as a result anything Trans Union did or did not do; he testified he suffered no physical symptoms and that he did not remember receiving any of Trans Union's responses to his communications. Interrogatory Answer No. 15 and Dep., pp. 50-1, 53-4 and 94.

> Q.   I take it you have not sought any medical treatment for anything related to your experience with TransUnion?
>
> A.  No.
>
> Q.  Do you think you have suffered any physical harm as a result of your dealings with TransUnion?
>
> A.  Physical?
>
> Q.  Physical harm?  Physical symptoms?  Weight loss?  Sleep loss?  Appetite loss?
>
> A.  No.
>
> Q.   And what's your best description of how TransUnion's acts harmed you or TransUnion's violation of the law harmed you?
>
> A.   Gobs of lawyer fees.  You know, I wasn't able to get a mortgage ….

### III.    Cornock's Legal Claims under the Pertinent Provisions of the FCRA

Cornock claims that Trans Union violated FCRA §1681e(b) by "preparing and publishing" consumer reports about him "without reasonable procedures to assure maximum possible accuracy." Plaintiff's Answer to Interrogatory No. 6.  FCRA §1681e(b) states:

> Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum

possible accuracy of the information concerning the individual about whom the report relates.

Cornock asserts Trans Union negligently[4] reported the inaccurate MBNA Account in consumer reports furnished to Chase Mortgage and Eaglemark Bank in 2007 in violation of §1681e(b). (Answer to Interrogatory No. 11 and 16)

Cornock also claims Trans Union negligently violated its FCRA §1681i reinvestigation duties. FCRA §1681i provides, in pertinent part:

> §1681i. Procedure in case of disputed accuracy
> (a) Reinvestigations of Disputed Information:
> (1) Reinvestigation Required –
>
> (A) In general. Subject to subsection (f), if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information…

Cornock claims Trans Union violated its FCRA §1681i reinvestigation duties because, *inter alia*, it "ignored the plaintiff's disputes and other information it received"; did not remove the MBNA Account; "simply 'parrots' whatever its creditor-customers instruct it to report" and should have "accepted plaintiff's explanations as empirically credible." *Id.* at Nos. 5, 6 and 10.

---

[4] §1681o. Civil liability for negligent noncompliance, provides as follows:

> (a) In general. Any person who is negligent in failing to comply with any requirement imposed under this title with respect to any consumer is liable to that consumer in an amount equal to the sum of
> (1) any actual damages sustained by the consumer as a result of the failure; and
> (2) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.
> (b) Attorney's fees. On a finding by the court that an unsuccessful pleading, motion, or other paper filed in connection with an action under this section was filed in bad faith or for purposes of harassment, the court shall award to the prevailing party attorney's fees reasonable in relation to the work expended in responding to the pleading, motion, or other paper.

6

Cornock also alleges the foregoing FCRA §1681e(b) and §1681i violations were willful under FCRA §1681n.[5]  *Id.*

## IV. ARGUMENT

### A. Summary Judgment Standard

Fed.R.Civ.P. 56(c) provides that summary judgment is proper:

> …if the pleadings, discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law

In *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct 2548, 91 L.Ed.2d 265 (1986), the United States Supreme Court defined the standard for summary judgment set forth in Rule 56(c):

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

---

[5] FCRA §1681n, Civil liability for willful noncompliance, provides, in pertinent part:

> (a) In general. Any person who willfully fails to comply with any requirement imposed under this title with respect to any consumer is liable to that consumer in an amount equal to the sum of
>     (1) (A) any actual damages sustained by the consumer as a result of the failure or damages of not   less than  $100 and not more than $1,000; or
>     (B) in the case of liability of a natural person for obtaining a consumer report under false pretenses          or knowingly without a permissible purpose, actual damages sustained by the consumer as a result of  the failure or $1,000, whichever is greater;
>     (2) such amount of punitive damages as the court may allow; and
>     (3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

106 S. Ct. at 2552-53. (*See also*, *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st. Cir. 1990)).

The plaintiff bears the burden of proof on all elements of his FCRA claims. *Philbin v. Trans Union Corp.* 101 F.3d 957 (3d Cir. 1996) and *Dalton v. Capital Associated Industries, Inc.*, 257 F.3d.409, 416 (4th Cir. 2001). Summary judgment should be granted when the defendant demonstrates the absence of evidence necessary to prove an essential element of the plaintiff's claim. *See Celotex*, 477 U.S. at 325. As explained by the Court of Appeals in *DeAndrade v. Trans Union LLC*, 523 F.3d 61, 65 (1st Cir. 2008):

> Summary judgment is appropriate where there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law." *Sanchez v. Alvarado*, 101 F.3d 223, 227 (1st Cir. 1996)(citations omitted).

Instantly, Cornock's FCRA claims fail because he cannot establish a factual inaccuracy in his consumer report. A showing of a factual inaccuracy is an essential element of both an FCRA §1681e(b) claim and a §1681i claim. *DeAndrade*, *supra*, 523 F.3d at 67 and 68, citing *Dalton, supra,* and *Spence v. TRW*, 92 F.3d 380, 382 (6th Cir. 1996). Further, even if he could establish an inaccuracy, he has not established that a Trans Union report caused him cognizable harm  Causation of harm is also an essential element of each claim. *Cousin v. Trans Union Corp.*, 246 F.3d 359 (5th Cir. 2001) *cert den*.122 S.Ct. 346, 151 L.Ed.2d 261; *Dalton*, *supra*, 257 F.3d at 419; *DeAndrade*, *Id.* at 67-84.

### B. Trans Union is Entitled to Summary Judgment Under Dispositive First Circuit Precedent.

The case is governed by *DeAndrade*, *supra*. In *DeAndrade* the First Circuit held that a consumer dispute of the legal validity of a debt does not trigger the reinvestigation duties under FCRA §1681i. *DeAndrade* also held that to trigger the FCRA §1681i duty a consumer dispute must raise a factual deficiency with respect to an item in his FCRA file. That is, under *DeAndrade*, a consumer reporting agency is required to reinvestigate a dispute raising "a factual inaccuracy that could have been uncovered by a reasonable reinvestigation", not "a legal issue". *Id*. at 68  The Court of Appeals held that a legal dispute respecting the status of an account does not raise a "factual inaccuracy" for purposes of §1681i. *Id.* at 68.

The material facts here and in *DeAndrade* are remarkably similar. There, Key Bank furnished information to Trans Union that DeAndrade was delinquent on a mortgage loan. DeAndrade maintained that he was not responsible for the mortgage loan because he did not sign the loan papers. DeAndrade sued Key Bank in state court for a declaratory judgment to the effect that he was not liable for the loan. *Id.* at 63. While the declaratory judgment action was pending, DeAndrade disputed the item to Trans Union under FCRA §1681i, and he submitted to a copy of the state court complaint with his dispute. In essence, DeAndrade disputed the validity of the debt as applied to him. Trans Union investigated the dispute by sending an ACDV to Key Bank. The dispute letter and state court complaint were not sent to Key Bank. Key Bank verified the debt as DeAndrade's responsibility. Trans Union notified DeAndrade that it verified the information and would continue to report the delinquency in DeAndrade's consumer report. Trans Union also provided DeAndrade with notice of his right to submit a consumer statement; DeAndrade did not submit a consumer statement.

DeAndrade then sued Key Bank, Trans Union and Equifax in the United States District Court for the District of Rhode Island and asserted that the ACDV reinvestigation process was legally insufficient to comply with Trans Union's FCRA §1681i duty to reinvestigate. The First Circuit rejected this claim no uncertain terms:

> what DeAndrade is attacking is the mortgage's validity. Whether the mortgage is valid turns on questions that can only be resolved by a court of law, such as whether DeAndrade ratified the loan. ***This is not a factual inaccuracy that could have been uncovered by a reasonable reinvestigation, but rather a legal issue that a credit agency such as Trans Union is neither qualified nor obligated to resolve under the FCRA.*** *DeAndrade*, 523 F3d. at 68 (Emphasis supplied)

Here, Cornock, like DeAndrade, claims he was not responsible for the debt because he did not sign the applicable credit agreement. Cornock's January 2006 dispute challenged his legal responsibility for the MBNA Account (without disclosing the Arbitration Award or enforcement action).

If Cornock is legally liable for the debt his report is accurate and there would be no factual deficiency to reinvestigate under the FCRA. However, the question of his liability for the underlying debt is not cognizable under the FCRA. This is precisely the result in *DeAndrade*.

Here, the Dispute challenged whether the credit card debt was legally enforceable against Cornock because, he alleged, it was opened by Lisa and he did not sign for the account: Whether the MBNA debt was enforceable against Cornock is a legal matter to be determined by a court. It does not amount to a factual inaccuracy in his credit report that Trans Union is obligated to resolve under FCRA §1681i. (*See DeAndrade*, *supra*)

Under *DeAndrade*, it was the court in the Enforcement Action that was responsible to resolve the legal dispute between MBNA and Cornock; Trans Union had no obligation under the FCRA to resolve that question. Indeed, by the time Cornock filed his dispute with Trans Union

in January 2006, the Arbitration Award had been in place for nearly *four (4) years*. In reality, Cornock wrongly asserts here that the FCRA required Trans Union to resolve **both** the validity of the Arbitration Award and then the validity of the disputed debt. Under *DeAndrade*, Trans Union had no such FCRA obligations.[6]

It is important to recognize that the FCRA strikes a balance with respect to consumer disputes which like this one turn on legal issues to be resolved in the courts  As explained in *DeAndrade*, "the FCRA provides an alternative remedy for consumers in cases such as this: pursuant to §1681i(c), they may submit a statement detailing their version of the dispute to be included in their credit report." *Id.* at 69. Instantly, Cornock did not submit such a statement, even though Trans Union notified him of his right to do so. See Little Decl.¶¶8 and 9. The Court of Appeals finding on this point is compellingly applicable here:

> It is no fault of Trans Union that DeAndrade apparently chose not to avail himself of that option.  523 F3d. at 69.

Likewise, it is no fault of Trans Union that Cornock chose not to "avail himself" of his right to include a consumer statement in his Trans Union report.

In the end, Cornock's gripe is not about Trans Union's reinvestigation procedures, or any inaccuracy, but about the fact that Trans Union did not resolve his dispute with MBNA in his

---

[6] Cornock's other claims under FCRA §1681i fail for want of proof. For example, Cornock claims that Trans Union deleted the MBNA Account and re-reported the account in violation of §1681i(a)(5)(c). Complaint, ¶71. However, the Little Decl. ¶7 establishes no deletion or re-reporting occurred – there is no contrary evidence. Cornock also claims Trans Union violated §1681i(a)(2)(B) by failing to "provide" "all relevant information regarding the dispute" to MBNA, presumably by failing to send copies of *Cushman* and *Johnson* to MBNA. However, copies of cases were not "relevant" to any factual inaccuracy contained in Cornock's report and therefore no violation is established. Finally, Cornock's December 2005 dispute identified an MBNA account with a number that did not appear on his file; Trans Union promptly informed him in writing that that disputed item was not on his file. Little Decl. ¶4. Trans Union's response complied with FCRA §1681i because the "item" identified in that letter was not "contained in [the] consumer's "file," as is required by §1681i(a) to trigger a reinvestigation. *See Klotz v. Trans Union LLC*, 246 F.R.D. 208, 212 (E.D. Pa 2007)

11

favor. Under *DeAndrade*, that is simply not a legally cognizable FCRA claim. Therefore, Cornock's FCRA §1681i claim fails as a matter of law.

*DeAndrade's* principles also render Cornock's §1681e(b) claims legally deficient. The most fundamental element of an FCRA §1681e(b) claim is proof of an inaccuracy. In *Dalton, supra*, the court of appeals stated "a consumer reporting agency violates §1681e(b) if (1) the consumer report contains inaccurate information…." 257 F.3d at 415, quoted in *DeAndrade, supra*, *Id.* at p. 65.[7] (See also, *Spence v. TRW*, 92 F.3d 380, 382 (6th Cir. 1996), where the court of appeals held plaintiff could not prevail on his § 1681e(b) claim "without proving the information in question was inaccurate"; and *Philbin*. 101 F.3d at 963) Here, Cornock has failed to demonstrate there was an inaccuracy in his consumer report.

Until January 2008 when Trans Union learned of the March 2007 Order vacating the Arbitration Award, Trans Union's reporting of the MBNA Account in Cornock's file was FCRA compliant.[8] Under *DeAndrade*, there could be no factual inaccuracy with respect to the MBNA Account at all times material hereto. Thus, Trans Union's reporting of the MBNA Account was accurate as a matter of law and it is entitled to summary judgment on Cornock's §1681e(b) claim.

### C. Cornock's FCRA Claims Fail for the Additional Reason that he has Adduced no Evidence that any Harm he Alleges was Caused by Trans Union.

Because Cornock failed to prove a factual inaccuracy, his FCRA claims fail. However, even if the MBNA Account was factually inaccurate, which it was not, Cornock cannot establish causation of harm related to Trans Union's reporting or reinvestigation of the MBNA Account.

---

[7] In *DeAndrade*, there was no §1681e(b) claim was made against Trans Union.

[8] The MBNA Account was deleted by Trans Union at that time. *See* Little Decl. ¶7.

12

Like "inaccuracy", causation of harm is an essential element of every FCRA §1681e(b) and §1681i claim.

> As the Court of Appeals held in *Cahlin*, *supra*:
>
> ***We stress that [plaintiff] had the affirmative duty of coming forward with evidence supporting his claim that [the consumer reporting agencies] alleged inaccurate report caused him harm.***
> 936 F.2d at 1160-1161 (Emphasis supplied)

*See also Cousin, supra,* 246 F.3d 359 (reversing jury verdict due to, *inter alia*, absence of evidence that the defendant's consumer report caused the plaintiff an adverse credit action); *Obabueki v. Choicepoint, Inc.*, 236 F.Supp.2d 278 (S.D. NY 2002) *aff'd* 319 F.3d 87 (2nd Cir. 2003) (jury verdict set aside due to lack of causal connection between employment denial and consumer report); *Dalton*, *supra*, 257 F.3d at 419.

Here, Cornock has failed to present any evidence to establish he was harmed by Trans Union's alleged violation of §1681 e(b) or §1681i. First, there is no evidence Cornock was denied credit or charged an unfavorable interest rate as a result of Trans Union's reporting of the MBNA Account to Chase Mortgage or Eaglemark. Therefore, his FCRA §1681e(b) claim that Trans Union's furnishing of the MBNA Account caused him harm fails and Trans Union is entitled to judgment as a matter of law.

Likewise, Cornock has failed to connect Trans Union's alleged violation of its FCRA §1681i reinvestigation duties to any harm, such as emotional distress. (*See e.g.* Interrogatory Answer, No. 16.) His own testimony was that he did not recall receiving responses to the Dispute. Dep., pp. 50-1, 53-4   Cornock sought no medical treatment and suffered no physical symptoms as a result anything Trans Union did or did not do. *Id*. at p. 94.

As such, even if Cornock was able to establish the essential element of an inaccuracy, which he cannot, his claims fail because he has not and cannot establish causation of harm.

**D.   Trans Union is Entitled to Summary Judgment on Cornock's Willfulness Claims Because *DeAndrade* Precludes a Finding That Trans Union Acted in Reckless Violation of the FCRA.**

A violation of the FCRA is "willful" for FCRA §1681n(a) purposes only if it is a "reckless" violation. See *Safeco Insurance Co. of America v. Burr*, 127 S. Ct. 2201 (2007). Although "reckless" is not defined in the FCRA, in *Safeco*, the Supreme Court explained it as follows:

> …a company subject to FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless. *Id.* at 2216

Under *DeAndrade*, (1) the FCRA does not require a CRA to resolve legal disputes, and (2) the existence of a legal dispute respecting information does not render the information inaccurate. The holding in *DeAndrade* forecloses a finding that Trans Union's conduct instantly was a violation, much less a "reckless" one.  Thus, Trans Union is entitled to judgment as a matter of law on Cornock's FCRA willfulness claims.

## IV. CONCLUSION

Trans Union respectfully submits that, as a matter of law, under the ruling of *DeAndrade*, the MBNA Account was not factually inaccurate and Trans Union's conduct about which Cornock complains cannot establish a negligent or willful FCRA violation. Therefore, Trans Union is entitled to summary judgment on Plaintiff's claims for violations of the FCRA.

                                      Respectfully submitted,

                                      /s/ William E. Christie
                                      William E. Christie
                                      NH Bar #11255
                                      Shaheen & Gordon, PA
                                      107 Storrs St., P.O. Box 2703
                                      Concord, NH 03302-2703
                                      (603) 225-7262; Fax: (603) 225-5112
                                      Email:  wchristie@shaheengordon.com

*Of Counsel:*

MARK E. KOGAN
BRUCE S. LUCKMAN
TIMOTHY P. CREECH
KOGAN, TRICHON & WERTHEIMER, P.C.
1818 Market Street, 30th Floor
Philadelphia, PA  19103
(215) 575-7600; Fax: (215) 575-7688

*Counsel for Defendant,
Trans Union LLC*

DATED:       March 16, 2009

15

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on March 16, 2009.

DATED:  March 16, 2009            /s/ William E. Christie
                                  William E. Christie
                                  Bar No. 11255
                                  Shaheen & Gordon, P.A.
                                  107 Storrs Street, P.O. Box 2703
                                  Concord, NH 03302
                                  (603) 225-7262
                                  wchristie@shaheengordon.com